Harvey Dimitrakopoulos, Plaintiff If Mr. Arizumi had merely called Keystone Resort and made a reservation to hold a room for him, and then traveled to Keystone and then tripped in the hallway on an improperly fastened carpet, there would be no jurisdiction in Hawaii. He could not say to the court, Keystone took my reservation by phone from Hawaii, therefore I can sue them in Hawaii. All of the cases that were presented by the appellee in this case, and the view that the trial court adopted, was that this is a reservations case, and this is not. This is a case where Mr. Arizumi contacted Keystone based upon their inclusion of an advertisement in the brochure he received from his organization. He could have contacted any travel agent. They were listed on the brochure. He called and inquired about getting a room. At that time, they indicated to him, well the way we work is, you want to buy a room, you buy it, you pay it in advance, in full, and you don't get any refunds. This is a sale. However, in addition to selling you a room, we can arrange your transportation from Denver up to our resort. The resort's at 9,000 feet above sea level. He's agreed to do that, and they arranged his transportation with the shuttle service. What we are asserting is that the difference between this case and a reservations case is that here, Keystone acted as a travel agent. They made the determination as to what the appropriate path of travel would be once he got to Denver. They arranged for him to basically get off the plane, get on a shuttle, and ride up to Keystone. We submitted below the affidavit of Dr. Hager, who explained what HAPE is, this high-altitude pulmonary edema, and how you get it, and how it's a risk for someone to go from sea level to 9,000 feet in a single transitory period. Keystone made a sale. They took the money, as shown in our excerpt from records, they took the money while he was in Hawaii and rendered their travel agent services. This makes them completely apart from a hotel that simply takes your credit card number and says, sure, we'll hold the room and we'll see you when you get here. In those cases, and I think they're unanimous across the country, is that the mere giving of a credit card number and holding a reservation for you does not create a transaction. That does not create jurisdiction in the location where the caller is calling from. To do so otherwise would mean that you could call from anywhere you want and create jurisdiction within your residential area. That's not within the parameters of what is intended in personal jurisdiction. Here we have two things that we believe submits Keystone to jurisdiction Hawaii. One is the contract itself, which we submitted in the excerpt of records, which shows the payment being made in full. Two, it's the conduct in providing the travel agent services, which we argue is tortious. And because that's where we argue to the court, they should have provided the warning. Now this is also different from the average reservations case because those are all premises liability cases. Every single one of the cases relied upon by appellee and the district court involves something wrong at the location where the person went. They came from Hawaii and they go to, say, Michigan and they go into a pool that's not properly cleaned, or they trip and fall down the stairs at the hotel. There, the duty to warn, the duty to make the place safe, it arises in that home jurisdiction where the business exists. In our case, the duty to warn is to provide the person calling, the person asking you to arrange their travel with the information they need to make a safe journey. Now, in this case, this is a very unusual situation because Keystone is about the only resort at this altitude anywhere in the world that I'm aware of. They have a unique situation which requires a unique warning. You're calling from Hawaii, I understand. Just to let you know, in sending you when we fax you your confirmation and your contract showing that you've paid us, we're going to give you some information. You may want to just check with your doctor before you make this decision. It wouldn't be unique to Hawaii. Anybody coming from sea level would have the same elevation change. Correct. That's correct. But because you called from here. Really, Judge, Your Honor, that's our argument, our case. Just so I'm sure now. Yes. Did the payment, the advance payment, include payment for the transportation? Yes, it did, Your Honor. And just so you can refer it, it's page 28 of our excerpt. It included the payment for transportation. Yes, it did. It's listed under shuttle. All right. Now, that's all I have. All right. I'll save the rest of my time. All right. Thank you. May it please the Court. My name is James Shin, and I'm representing the defendants' appellees, Vail Resorts, Inc., DBA, Keystone Resorts. The central issue in this case is whether a Hawaii resident can maintain a suit in Hawaii against a Colorado ski resort for injuries that manifested in Colorado, and whether such a maintenance of suit does not offend notions of fair play and substantial justice pursuant to the due process clause. Now, the cases I have provided to the Court, whether it be a Wyoming river rafting company being sued in Nebraska, a Pennsylvania ski resort being sued in New York, or a Las Vegas hotel being sued in New Jersey, or a Hawaii resort being sued in Massachusetts, they've uniformly held that such a suit would offend traditional notions of fair play and substantial justice. And either way you slice it, if you look at this from a specific jurisdiction analysis, there is no specific jurisdiction. I provided the case law, and the case law is before the Court, showing that actions such as maintaining 800 numbers, sending brochures to prospective customers, confirmation of reservations, obtaining credit card information, billing out-of-state residents, such actions do not amount to purposeful availment under specific jurisdictional analysis. Furthermore, courts have analyzed the arising-out-of requirement under specific jurisdictional analysis. More specifically, the Ninth Circuit has addressed the arising-out-of element and held that they use a but-for analysis, and that's set forth in, I believe, Ballard v. Savage, and initially set forth in Carnival or Shooting v. Carnival Cruise Lines. Now, the but-for analysis is that but for the contacts themselves, these injuries would not have occurred. Now in this particular case, the contacts that they're talking about are confirmations of reservation after the plaintiff, a Hawaii resident, sent a filled-out reservation card to Keystone. It was the plaintiff that initiated the contact and wanted to stay at Keystone. Keystone did not initiate the contact. Keystone's only contact came through the American Society of Drinking Waters Administrator, pursuant to the conference agreement. That was an agreement between the ASDWA, which is based in Washington, D.C., and Keystone in Colorado. Now, perhaps an argument could be made that jurisdiction would be proper in Washington, D.C., if there was a breach of the conference agreement, but that's not an issue here. The issue here is the pre-printed envelopes, which were provided to ASDWA to provide to their constituents, and the plaintiff was the Hawaii representative for ASDWA. He was given the pre-addressed envelopes and filled it out. He initiated the contact. That's why we have a more compelling case that there are no elements of purposeful availment. And when we look at the but-for analysis, we see that the contact, the confirmation of reservation, has nothing to do with the fact that he was injured in Colorado. Merely because they confirmed reservation, the act of sending Mr. Arazumi a confirmation has nothing to do with the fact that he contracted this high-altitude sickness. Furthermore, when you look at it from a general jurisdictional analysis, we don't have contact that's continuous and systematic, and that's addressed in the representative for Keystone, John Rutter's affidavit. And affidavits which are supported against personal jurisdiction or the assertion of personal jurisdiction, it hasn't been contradicted by the plaintiff. The plaintiff has not shown that there is any continuous or systematic conduct in this case. Therefore, there is no general jurisdiction in this case, no specific jurisdiction, and the assertion of personal jurisdiction would offend the notions of fair play and substantial justice. Thank you. Now, the appellant relies heavily on the fact that there was the separate provision of transportation or arrangement for transportation. And I don't remember right now whether in the initial application by the decedent, did he ask for both room accommodations and transportation and offer payment for both, or did he just ask for room accommodation and then he was contacted and offered transportation? Actually, the record is not clear how that came about. What we submitted to the lower court was an affidavit of John Rutter, and that provided the conference agreement. The plaintiff, in turn, submitted there was two confirmations of reservation, and on one sheet appears to be confirming that he's reserved a room. The second one then, I think, addresses the shuttle costs or transportation costs. And then he responded to that and paid for it? Is that the picture? I really could not tell you. The record is not clear. Well, now, if there's any defense against this, it doesn't do any good to just be warned about it, because I take it that it's pretty hard to tell whether or not you're susceptible to this malady, right? Yes. And if there's any defense to it, the only defense to it or remedy for it or way to avoid it, if you will, is in the trip to the resort. You do it gradually. Is that right? I do not know the merits of this particular sickness, and I do not know the mechanics or the symptoms. Well, the transportation is, is it fair to say that the transportation, in the context of what happened to this man, is more significant than the fact that he was there? Once he's there, he has no preventive measures that he can take or either. At least this record doesn't say so. Well, if you look at Mr. Arazuni's affidavit, and I believe that's submitted in the excerpts of record at page 39-41, he addresses that there are certain steps he could have taken through his physician, like medication, things like that, which would have addressed the issue. Okay. Okay. That's in his affidavit, so I'm just assuming for purposes of jurisdiction that's true. And I guess I should not have referred to anybody as the decedent. It occurs to me now he suffered serious injury and is not, the condition was not fatal. Yeah, as far as I'm concerned, I don't think he's still alive. Okay. Yeah. All right? All right. Thank you. Thank you. Your Honor, actually the integrity of this proceeding is more important than the fatality of my case. And I've got to tell you, I just checked to make sure that I answered you correctly earlier, and I looked at the credit card statement that had been provided as part of the excerpt of records. There is a separate charge for the resort express shuttle. And so I was just doing some quick math here. And I believe that the charge that was made by Keystone was only for Keystone's actual lodging costs. And that thereafter, when the resort express transportation actually took place, that's when the charge was entered for resort express for the shuttle. And they were not the same payable to whom that was paid to resort express. But Keystone arranges they have a contract with resort express. So what they do is they offer to the customer calling up, we can arrange a shuttle for you. They then book the shuttle for you and give you the confirmation on your shuttle. And you actually pay for it, I believe, based on this charge card statement, when you take the shuttle. Okay. So all they did then, all the defendant did is say, we'll make the reservation for you. Yes. It did not accept payment for it and then hire the transporting agent. That's correct. Based on the record, Your Honor. I want to make sure I correct it. I don't know whether it makes any difference or not, but at least. I argue it does not. But I want to make sure that I was completely forthright with the court. I believe that it's still it's our point is they acted as a travel agent. And as an agent, if they had merely given the warning, you should consult your physician before taking such a journey in such a time span. We submitted the affidavit. Dr. Hager, who explained that there are different mechanisms that can be done, such as either staging the transportation or taking medication. We have to begin it a certain number of days beforehand. Well, now, you acknowledge that but for this transportation arrangement, if you will, your case is like the hundreds of other cases that plaintiffs in your situation have lost. Without a doubt. And the only thing that differentiates your case is to the extent that they offered to say, we'll line you up or make a reservation with the transportation agency and you pay for them if you get there. Yes. OK. That's our limiting factor. The other thing, just real briefly, Judge, is as far as the issue of the motion to intervene, what we argued to the court below was that the state should have been allowed to intervene because they have a substantial interest in this matter. They have the right to bring a claim against any third party who causes harm for which they pay benefits. They paid over fifty five thousand dollars in benefits in this case and moved to intervene. What the court did, unfortunately, was it made its decision that it's going to dismiss the action based on lack of jurisdiction and then said, well, since I'm dismissing it, there's no point in allowing the state to intervene. But we assert is that, in fact, the state should have been allowed to. Its interest should have allowed being allowed to intervene. And that would have added another reason why it would be suitable to have jurisdiction here. That's kind of a tough call for the district court. So it could say, yeah, you could come in here, but you're going to lose already knowing they're going to lose. That's correct. Yeah. All right. Other than that, that's all. Thank you. Thank you. Case just argued will be submitted. You go then to the next case. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.
judges: Leavy, Rymer, Tg Nelson